UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PAULINE G. GREENE<br>    *Plaintiff* | : | CIVIL NO. 03:CV526(WWE) |
| | : | |
| v. | : | |
| | : | |
| UNIVERSITY OF CONNECTICUT<br>HEALTH CARE CENTER, CONNECTICUT<br>DEPARTMENT OF CORRECTION<br>    *Defendants* | :<br><br>: | <br><br>NOVEMBER 12, 2004 |

**MEMORANDUM OF LAW IN SUPPORT OF**

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

The plaintiff is a former employee of the defendant University of Connecticut Health Center (UCHC) who claims that the defendant has violated her rights under Title VII of the Civil Rights Act of 1964.  She alleges that she was discriminated against on the "grounds of her race and color and retaliated against . . . for complaining about such discrimination."  (Complaint, ¶ 1)

Parenthetically, the defendants filed a Motion to Dismiss that was granted by the Court absent objection on October 22, 2003.  As part of the ruling on Motion to Dismiss, the Connecticut Department of Correction is no longer a party to this action. While the Amended Complaint dated October 12, 2003 is the operative complaint, it does not reflect the dismissal of the Department of Correction.  In essence, the plaintiff, a black female, contends that she was discriminated against because of her race and gender.  She maintains that her employer UCHC

treated her differently from other similarly situated individuals by not allowing her to return to work from a workers compensation injury unless and until she was able to return without physical limitations or restrictions.  Plaintiff, who was ultimately separated from State service, maintains that she was retaliated against for having previously opposed discriminatory treatment.

The defendant UCHC maintains that plaintiff cannot bear her burden of proving discrimination and/or retaliation.  Similarly, the plaintiff is unable to demonstrate that she was treated differently from other similarly situated individuals.  The defendant UCHC respectfully requests judgment in its favor as a matter of law.

## II.   FACTS

The defendants' Local Rule 56(a)1 Statement of Material Facts Not in Dispute, submitted pursuant to Local Rule 56(a)1, constitutes the facts of this case.  Said Statement of Material Facts is incorporated herein by reference.

## III.   SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, this Court should grant summary judgment when "there is no genuine issue as to any material fact...and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In cases such as this, where the movant is the defendant, that party must demonstrate that the nonmoving party, the plaintiff, lacks evidence to support an essential element of his claim.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The movant's burden is "discharged by showing - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id.

Once the movant has met this initial burden, the opposing party must present evidence establishing a material issue of fact. Celotex, 477 U.S. at 325. The nonmoving party must go "beyond the pleadings" and present evidence designating "specific facts showing that there is a genuine issue for trial." Id. at 324. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

To grant a motion for summary judgment in favor of the defendant, the court does not need to find that there is literally no evidence in favor of the plaintiff. "The judge's inquiry...unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict - 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party...upon whom the onus of proof is imposed.'" Liberty Lobby, 477 U.S. at 252.

Thus, an issue is not genuine if it is unsupported by evidence or is created by evidence that is "merely colorable" or "not significantly probative." Liberty Lobby, 477 U.S. at 250. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252. A fact is not material unless it is, under controlling substantive law, an essential element of the nonmoving party's case with respect to which he has the burden of proof at trial. Id. at 248. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of every essential element of his case so as to create a genuine issue for trial. Celotex, 477 U.S. at 323; Larkin v. Town of West Hartford, 891 F. Supp. 719, 723 (D. Conn. 1995), *quoting* Celotex.

IV. **ARGUMENT**

The plaintiff's Amended Complaint is confusing because the factual basis for the legal theory pled is overlapping and vague. References are made to discrimination, disability and retaliation. Secondly, as noted earlier, the Department of Correction is no longer a party to this action.

In essence, the Amended Complaint alleges that the plaintiff was discriminated against because of her race and color in violation of Title VII and she was retaliated against for previously having complained of discrimination.

A. **THE PLAINTIFF CANNOT PROVE A CLAIM OF DISCRIMINATION BECAUSE OF HER RACE OR COLOR.**

In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), the Supreme Court "established an allocation of the burden of production and an order for the presentation of proof," that applies both to Title VII discriminatory-treatment cases, St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506, 113 S. Ct. 2742, 125 L. Ed.2d 407 (1993), and to cases arising under the ADEA. Fisher v. Vassar College, 114 F.3d 1332, 1335 (2d Cir. 1997)(en banc).

According to the Supreme Court, the plaintiff in an employment discrimination case has the burden at the outset of "proving by a preponderance of the evidence a prima facie case of discrimination." Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 251, 101 S. Ct. 1089, 67 L.Ed.2d 207 (1981); see also McDonnell Douglas, 411 U.S. at 802. If the plaintiff succeeds in establishing a prima facie case, the burden of production shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its action. McDonnell Douglas, 411 U.S. at 802. "Any legitimate, nondiscriminatory reason will rebut the presumption triggered by the prima facie case." Fisher, 114 F.3d at 1335-1336. "Thus, 'the defendant need not persuade

4

the court that it was actually motivated by the proffered reasons' in order to nullify the presumption and obligate the plaintiff to satisfy the burden of proof." Fisher, 114 F.3d at 1335-36 quoting Burdine, 550 U.S. at 254; see also Meiri v. Dacon, 759 F.2d 989, 996 n. 11 (2d Cir. 1985).

"If the defendant articulates a nondiscriminatory reason for its actions, 'the presumption raised by the prima facie case is rebutted,'" Fisher, 114 F.3d at 1336, and "simply drops out of the picture." St. Mary's, 509 U.S. at 511. At this point, the plaintiff has an opportunity to prove by a preponderance of the evidence that the employer's reason was "a pretext for discrimination." Burdine, 450 U.S. at 253; McDonnell-Douglas, 411 U.S. at 804. In order to meet this burden, the plaintiff must show by a preponderance of the evidence "*both* that the reason was false, *and* that discrimination was the real reason." Fisher, 114 F.3d at 1339, quoting St. Mary's Honor Ctr. v. Hicks, 509 U. S. 502, 515, 113 S. Ct. 2742, 125 L.Ed.2d 407 (1993)(italics in original). It is not enough for the plaintiff simply to show that the employer's proffered reason for its actions was not the real reason. Fisher, 114 F.3d at 1337-1338. Thus, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." St. Mary's, 509 U.S. at 507; Burdine, 450 U.S. at 253. In the present case, the plaintiff cannot meet this burden.

To defeat a motion for summary judgment on a claim of discriminatory treatment under Title VII, the plaintiff must prove: (1) that she belongs to a protected class; (2) that she was qualified for the position and/or performing her duties satisfactorily; (3) that she was subjected to an adverse employment action; and (4) that the adverse action occurred in circumstances giving rise to an inference of discrimination on the basis of her membership in that class. McLee v.

Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S. Ct. 2097, 2106, 147 L.Ed.2d 105 (2000).

### 1. **Plaintiff Has Failed To Establish A Prima Facie Case**

It is conceded that plaintiff is a member of a protected class. It is not conceded that she was qualified to perform her duties satisfactorily or that her termination gave rise to an inference of discrimination on account of her race. Similarly, it is not conceded that the defendants treated plaintiff differently from other similarly situated employees.

While the plaintiff's prima facie burden of proof is minimal, it is not definite. Cruz v. Coach Stores, Inc. 202 F.3d 560, 567 (2d Cir. 2000). The evidence is overwhelming that plaintiff, despite her grandiose comments and/or letters to the contrary, never made herself available to return to work after her July, 1998 injury.

It is extremely important to refrain from getting bogged down in the minutia of the plaintiff's medical records. The appropriate documents were submitted to the court in order to demonstrate the inconsistent positions taken by plaintiff and/or her attorneys in numerous and simultaneous forums, and the degree of deception and manipulation by plaintiff in all related forums.

What is most compelling is that plaintiff has not filed an ADA claim. Her disability (if in fact, she was disabled) is not an issue in this case. The plaintiff has not contested the DOC and/or UCHC rule forbidding a hazardous duty employee from returning to work after an injury if he/she has been released to work with physical restrictions. The issue in this case is not the propriety of the DOC/UCHC rule that has been litigated in Motta v. Meachum, 969 F.Supp 99

(D.Conn. 1997) in favor of DOC. (Exhs. 16, 17)  The issue in this case is whether this rule was applied to plaintiff and others in a uniform manner by UCHC so as not to violate Title VII.

It is important to note that after the July 1998 injury, plaintiff has never made herself available to return to work.  Despite being given a 100% clearance by Dr. Selden in 1999, and despite her attorney letters to the contrary, plaintiff never responded to Attorney Comerford's letter (Exh. 31), made herself available for work, or provided documentary evidence that she was able to return to work without physical restrictions.  (Exhs. 28, 29, 30, 31)   See all doctors reports with restrictions.  (Exhs. 32, 33)

To the contrary, the plaintiff objected to the filing of the "Form 36" in 1999 wherein the worker's compensation carrier sought to discontinue benefits.  (Exhs. 29, 30)  Plaintiff's attorney, in August 2000, filed in a pleading to the Workers' Compensation Commission that plaintiff was "totally incapacitated" and not able to go to work. (Exh. 24)  At all times between July 1998 and May 2002, plaintiff received worker's compensation payments and she and her attorneys have consistently maintained that she was entitled to receive worker's compensation benefits.  (Exh. 2, p. 60,  Exh. 9 pp. 60-62, 186, 202-03)  From July 1998 through 2003 plaintiff received Social Security Disability benefits.  She never notified Social Security or worker's compensation that she was able to work at her own job much less any other job.  (Exhs. 49, 50, Exh. 9, pp. 123-25, 187-89.)  Since July 1998 plaintiff never worked or sought other non-hazardous duty employment because she was "too medically distraught."  (Exh. 9, p. 182)

The evidence is overwhelming that plaintiff never acknowledged that she was physically able to return to work.  Additionally, plaintiff never made herself available for work when, after Dr. Selden's report, she had the ability to return.  Instead, she maintained her "disability"

7

through worker's compensation and social security.  She ultimately sought and received a disability retirement, claiming July 1998 as her date of disability. (Exhs. 46, 47, 48)

In short, plaintiff was not qualified to continue in her position for the reason that she was not able to work without restriction.  For that reason, and with the overwhelming evidence that her behavior indicated that she had no intention of working, plaintiff has failed to establish a prima facie case for race discrimination.

Additionally, the defendant submits that plaintiff's contrary positions in this forum, at the Social Security Administration and at the Worker's Compensation Commission, are fatal to her argument of race discrimination.  As discussed above and as documented in defendants Rule 56(a)1 Statement of Undisputed Facts, the plaintiff maintains that she was discriminated against in that she was prevented from returning to work.  At the same time, she claimed that she was disabled and entitled to benefits of social security, workers compensation, disability insurance and disability retirement.  It is submitted that plaintiff's positions are irreconcilably inconsistent, that she has acted in bad faith, and that she should be judicially estopped from continuing her federal discrimination case.  See Detz v. Greiner industries, Inc. 346 F.3d 109, 114-15, 121 (3d. Cir. 2003)  In the Detz case, the court granted defendant's summary judgment and held that the inconsistencies as between positions taken in the Social Security Disability forum and the ADEA case could not be reconciled.  The Court found that the plaintiff could not make the representation that he was qualified for work under the ADEA when his representations to the Social Security Administration were in direct contradiction.  Id. at 119-121.  To the extend that plaintiff cannot prove that she was qualified for her position, she is unable to prove her prima facie case and, therefore, this action should be dismissed.

8

**2.    The Defendant's Decision to Terminate Plaintiff Was Based on Legitimate, Nondiscriminatory Reasons.**

In the event that the Court finds that the plaintiff has made out a prima facie case, the defendant asserts that its decision to terminate plaintiff was based on legitimate nondiscriminatory reasons. After Commissioner Ernie Walker had determined that plaintiff's worker's compensation payments were wrongfully obtained, the UCHC sent plaintiff a letter informing her that her workers' compensation and FMLA leaves had long expired. (Exhs. 38, 39) Plaintiff was asked to submit a medical certificate or be separated from State service. (Exh. 39) Plaintiff responded on June 26, 2002 with a copy of Dr. Selden's 1999 medical release that plaintiff had previously ignored. (Exh. 40) Plaintiff was given additional time to forward another report which, on July 8, 2002, documented numerous physical restrictions. (Exh. 42) Plaintiff was separated from State service on July 22, 2002.

The plaintiff has failed to offer any credible evidence to counter the defendant's legitimate nondiscriminatory reasons for terminating plaintiff based upon documented and substantiated findings that she was no longer entitled to remain employed vis a vis her expired medical leaves. Without adequate evidence of pretext, plaintiff cannot sustain her burden as a matter of law.

**3.    Plaintiff Is Unable To Demonstrate and Prove Pretext.**

It is the plaintiff's burden to put forth adequate evidence to support a rational finding that the nondiscriminatory reasons put forth by the defendant employee are pretext, and the employee's race was the real reason behind the employer's decision to terminate plaintiff. See Viola v. Philips Med. Sys. of North America, 42 F.3d 712, 717 (2d Cir. 1994).

Plaintiff is likely to maintain that she was physically able to return to her job but that, as a black woman, she was treated differently than others similarly situated when she was not allowed back to work with her physical restrictions. She is also likely to maintain that her restrictions were pretext on the part of UCHC. It is submitted that the overwhelmingly credible evidence fails to support plaintiff's position.

The UCHC, for purposes of this motion, researched their records and created a number of lists of all individuals between 1998 and 2003 who were:

1. On medical leave released to light duty who were not allowed to return to work until they were released for 100% full duty without restrictions.

2. On worker's compensation released to light duty who were not allowed to return to work until they were released for 100% full duty without restrictions.

3. On medical leave who never returned; some took disability retirement, some took regular retirement, some resigned.

4. On worker's compensation who never returned; some took disability retirement, some took regular retirement, some resigned and some were laid off.

All of the above lists chronicle men and women, Black, White, and Hispanic employees who were all subject to the same standards with regard to returning to the workplace. In short, all individuals who had physical limitations and/or restrictions were kept from returning to their hazardous duty positions unless and until they were released to full duty without restriction. (Exh. 52A-D; Affidavit of Jessica Van Alstyne, Exh. 53)

In her deposition, plaintiff named Dr. Goodwin and other unnamed individuals as persons treated differently. (Exh. 9, pp. 162-65) The Goodwin reference dates back to 1995, at least two

years prior to UCHC becoming his employer – UCHC was not Goodwin's employer in 1995. (Exh. 54)

In February 2002, as part of "Pauline Greene's Grievance" the union submitted a list and requested medical notes from various employee files. (Exh. 55) A review of all records of employees on that list reveals that men and women, White and Black were treated equally. (Exh. 54)

The defendant submits that the evidence put forth by plaintiff to demonstrate pretext is insufficient under the requisite legal standard. There is no evidence that plaintiff's race as opposed to her ability to do her job and the expiration of her medical and worker's compensation leaves was behind her separation by defendant. For this reason the defendant moves that its Motion for Summary Judgment be granted..

### B.  THERE IS NO EVIDENCE SUPPORTING THE PLAINTIFF'S RETALIATION CLAIMS UNDER TITLE VII

The plaintiff's complaint is vague as to what constitutes retaliation as alleged. She is likely to make two arguments: 1) that she was not allowed to return to work in retaliation for having filed her 1998 CHRO complaint and subsequent federal lawsuit that was dismissed by the Court (Complaint ¶ 9 Statement of Material Facts fn 2); and/or 2) that she was terminated by UCHC in retaliation for her CHRO complaints including the one filed in August 2001 that is the subject of this lawsuit. (Exh. 37)

Title VII prohibits retaliation discrimination for opposing unlawful acts of discrimination. 42 U.S.C. § 2000e-3(a). To establish a prima facie case for Title VII retaliation, a plaintiff must establish that: (1) she was engaged in protected activity under the statute, (2) that she suffered an adverse employment action *subsequent thereto*, and (3) there existed a casual connection

between the protected activity and the adverse employment action.  <u>Gallagher v. DeLaney</u>, 139 F.3d 338, 349, (2d Cir. 1999).  An adverse employment action must be a "materially adverse change in the terms and conditions of employment."  <u>Weeks v. New York State</u>, 273 F.3d 76, 85 (2d Cir. 2001); <u>See</u> also, <u>Gallagher v. DeLaney</u>, 139 F.3d 338, 349, (2d Cir. 1999); <u>Smart v. Ball State Univ.</u>, 89 F.3d 437, 441 (7th Cir. 1996) (not everything that makes an employee unhappy is an actionable adverse action).

In the present case, the plaintiff's protected activities consist of her filing a CHRO complaint in 1998 that became the subject of a federal lawsuit dismissed by the court; and her filing a CHRO complaint in August 2001.  To the extent that plaintiff alleges in her August 2001 CHRO complaint that she was discriminated against from "May 1999 to present" the defendant submits that reliance upon the earlier 1998 complaint for a basis of retaliation is both too remote in time and not related in subject matter.  More importantly, the filing of the August 2001 CHRO complaint can look back only 300 days to the late spring of 2000, not 1999.

A plaintiff bringing an employment discrimination action under Title VII must first exhaust administrative remedies, by filing a complaint with the Equal Employment Opportunity Commission (EEOC).  42 U.S.C. § 2000e-5(e).  The U.S. Supreme Court has recently re-iterated:

> Title *42 U.S.C. § 2000e-5(e)(1)* is a charge filing provision that "specifies with precision" the prerequisites that a plaintiff must satisfy before filing suit.  *Alexander v. Gardner-Denver Co., 415 U.S. 36, 47, 39 L.Ed 2d 147, 94 S.Ct. 1011 (1974).*  An individual must file a charge within the statutory time period and serve notice upon the person against whom the charge is made.  In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days.  A claim is time barred if it is not filed within these time limits.

Nat'l Railroad Passenger Corp. v. Abner Morgan, Jr., 536 U.S. 101, 122 S.Ct. 2061, 2070, 153 L.Ed.2d 106, 2002 U.S. LEXIS 4214, 70 U.S.L.W. 4524 (June 10, 2002).

Since Connecticut has the Commission on Human Rights and Opportunities (CCHRO), the longer 300 day time limit applies.[1]  In accord, Butts v. City of N.Y. Dept. of Housing Preservation & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993). Plaintiff filed her present complaint with EEOC on August 31, 2001. (Facts, ¶ 115). *Therefore, any claims based upon discrete acts that occurred before November 3, 2000 are time-barred.*

"A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within … 300 days of the date of the act or lose the ability to recover for it." Abner Morgan, supra, 122 S. Ct. at 2070-71. The plaintiff is unable to point to a "discrete act" between November 2000 and the filing of her CHRO complaint on August 31, 2001. Presumably, she will argue that by not allowing her to return to work the UCHC engaged in a continuing violation. To the contrary, the plaintiff is unable to cite to discrete intervals where her medical documents demonstrate that she was able to return to the workplace without restriction. In July of 1999, Dr. Selden released her to work and she did not return. She should not be able to avail herself of the continuing violation exception to the 300 day statutory time limit.

More significantly, the plaintiff, until her separation from State service in July 2002, had not suffered an adverse employment action. Until plaintiff's separation from State service on July 22, 2002, she has maintained entitlements to worker's compensation payments through May

---

[1] The statutory requirement that an administrative charge be filed within 300 days is similar to a statute of limitations. Zipes v. TWA, Inc., 455 U.S. 385, 394, 102 S.Ct. 1127, 1133, 71 L.Ed.2d 234 (1982).

22, 2002, when Commissioner Walker terminated the payments. At all times, plaintiff maintained that she was disabled for Social Security purposes. Plaintiff received Social Security payments well past her termination date of July 2002 and received worker's compensation payments through May, 2002. It was determined by the Worker's Compensation Commissioner, that due to her own manipulation and dishonesty, she had not been entitled to compensation and was ordered to repay a large amount to the State. That decision was **NOT** made by UCHC. Plaintiff cannot point to a single incident prior to her separation where her position had changed vis a vis UCHC since she left with her injury in July 1998. Plaintiff can not point to a change in her circumstances that was caused by UCHC until her separation in July, 2002.

While it is conceded that her separation from State service in July 22, 2002 was both a discrete act and an adverse employment action, it is submitted that there is no causal nexus between the plaintiff's act of filing a CHRO charge in either 1998 or 2001 and her alleged adverse treatment. Additionally, plaintiff cannot establish that she was singled out for adverse treatment because she complained of discrimination. It is clear from the documentation that plaintiff was separated because she exhausted both her worker's compensation and medical leaves. (Exh. 43) A review of other UCHC employees who were separated between 1998 and 2003 due to exhaustion of medical leaves, reveals six individuals including plaintiff. Four of the six were white women. (Exh. 52, Exh. 53) Plaintiff cannot, therefore, claim race discrimination as a reason for her separation.

Finally, it is significant that plaintiff, immediately upon learning of her separation, applied for a disability retirement based upon her July 1998 injury. While she signed her application on July 25, 2002, she submitted the physician's statement that was dated July 17, 2002, some five (5) days before her separation. (Exh. 59) Clearly, she initiated her disability

14

retirement application prior to her July 22, 2002 separation. At that time, she and her physician made representations that she was disabled and could not return to work. She should not now be able to prevail with the allegations that she was discriminated and/or retaliated against by her employer.

In short, and for the above mentioned reasons, plaintiff cannot demonstrate that she suffered an adverse employment action sufficient to meet the requirements of Title VII discrimination and/or retaliation or that her adverse employment action was causally related to protected activity.

## V. CONCLUSION

For all of the foregoing reasons, the defendant respectfully submits that there is no genuine dispute as to all the material facts and that it is entitled to summary judgment as a matter of law on all counts of the plaintiff's complaint.

>DEFENDANTS,
>UNIVERSITY OF CONNECTICUT
>HEALTH CENTER, CONNECTICUT
>DEPARTMENT OF CORRECTION
>
>BY:   RICHARD BLUMENTHAL
>        ATTORNEY GENERAL
>
>_____
>
>Jane B. Emons
>Assistant Attorney General
>Office of the Attorney General
>55 Elm Street - P.O. Box 120
>Hartford, CT  06141-0120
>Tel:  (860) 808-5340
>Fax: (860) 808-5383
>Email:  Jane.Emons@po.state.ct.us
>Federal Bar No. ct16515

## **CERTIFICATION**

I hereby certify that a copy of the foregoing Memorandum of Law in Support of Defendant's Motion for Summary Judgment was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure, first-class, postage prepaid on this 12th day of November, 2004.

John R. Williams, Esq.
Williams and Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT  06510

                                                      _____
Jane B. Emons
Assistant Attorney General
Office of the Attorney General
55 Elm Street - P.O. Box 120
Hartford, CT  06141-0120
Tel:  (860) 808-5340
Fax: (860) 808-5383
Email:  Jane.Emons@po.state.ct.us
Federal Bar No. ct16515