UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PAULINE G. GREENE | : | |
| | : | |
| VS. | : | NO. 3:03CV00526(WWE) |
| | : | |
| UNIVERSITY OF CONNECTICUT | : | |
| HEALTH CARE CENTER, | : | |
| CONNECTICUT DEPARTMENT | : | |
| OF CORRECTIONS | : | DECEMBER 5, 2004 |

**PLAINTIFF'S LOCAL RULE 56 STATEMENT**

*A*  *RESPONSES TO DEFENDANT'S CLAIMS OF FACT*

1. Agree.

2. Agree.

3. Agree.

4. Agree.

5. Agree.

6. Agree.

7. Agree.

8. Agree.

9. Agree that the civil rights action filed by Attorney John Rose was dismissed for failure to comply with a court order. Otherwise, disagree.

10. Agree.

11. Agree.

12. Agree.

13. Agree.

14. Agree.

15. Agree, but irrelevant. Unsworn evidence not otherwise admissable.

16. Agree. The defendant refused to permit the plaintiff to return to work under restrictions or on light duty, although it has done so in the case of white employees similarly situated to the plaintiff.

17. Agree.

18. Disagree. (Exhibit C)

19. Agree.

20. Agree.

21. Agree that DOC makes that claim. However, the DOC claim is irrelevant because the DOC is not the plaintiff's employer and was not the plaintiff's employer at the time of the events at issue in this litigation. (Defense Exhibit 5) Moreover, the DOC claim is false. (Defendant's Exhibit 54)

22. Agree, but irrelevant.

23. Agree.

24. Agree.

25. Agree, but irrelevant.

26. Agree, but irrelevant.

27. Agree.

28. Agree.

29. Agree.

30. Agree, but irrelevant.

31. Agree.

32. Agree.

33. Agree.

34. Agree.

35. Agree.

36. Agree.

37. Agree.

38. Agree that the lawyer for a non-party made that hearsay statement. However, it is inadmissible and may not be considered.

39. Objection. No authority is cited for this assertion, as required by Local Rule 56. Move to strike.

40. Agree.

41. Agree.

42. Agree.

43. Agree.

44. Agree.

45. Objection. Hearsay. Move to strike.

46. Agree.

47. Agree but not admissible evidence and therefore move to strike. This ruling is presently on appeal before the Connecticut Appellate Court, under Docket Number A. C. 26004. (Please take judicial notice of this official court record. *Cf.* Exhibit C, p. 49)

48. Irrelevant.

49. Disagree. (Appellate Court Docket No. A.C. 26004; Exhibit C, p. 49.)

50. Agree.

51. Agree.

52. Agree.

53. Agree.

54. Agree.

55. Agree.

56. Agree that the plaintiff's employment was terminated on that date. Disagree with remainder. (Exhibit C)

57. Agree.

58. Objection. Irrelevant. Move to strike. "The Supreme Court has held

that Congress, in enacting Title VII, generally intended to eliminate the binding effect of prior administrative findings and provide a *de novo* trial on Title VII claims. *See* University of Tennessee v. Elliott, 478 U.S. 788, 795 (1986). The only exception to this rule is where an administrative finding is challenged and decided in state court resulting in a state court judgment on the same claim or issue." Raniola v. Bratton, 243 F.3d 610, 623-24 (2d Cir. 2001). *Cf., e.g.,* DeCintio v. Westchester County Med. Ctr., 821 F.2d 111, 114-15 (2nd Cir. 1987); Roth v. Koppers Indus, Inc., 993 F.2d 1058, 1060-63 (3rd Cir. 1993); Rao v. County of Fairfax, Va., 108 F.3d 42, 45 (4th Cir. 1997); Duggan v. Board of Education, 818 F.2d 1291, 1293-95 (7th Cir. 1987); Abramson v. Council Bluffs Community School Dist., 808 F.2d 1307, 1308-09 (8th Cir. 1987); McInnes v. California, 943 F.2d 1088, 1093-94 (9th Cir. 1991).

    59. Agree.

    60. Agree.

    61. Agree.

    62. Agree.

    63. Agree.

    64. Agree.

    65. Agree.

    66. Agree.

67. Agree.

68. Agree.

69. Agree.

70. Agree.

71. Agree.

72. Plaintiff cannot respond to this assertion because it is unclear.  Does the defendant mean that the plaintiff's compensation rate was computed on that basis or does the defendant mean that the plaintiff's compensation was actually identical to her rate of pay?

73. Agree.

74. Objection.  Move to strike.  See Response to Paragraph 47.

75. Objection.  Move to strike.  See Response to Paragraph 47.

76. Agree that Ms. Van Alstyne, whose identity as a potential witness in this case was not disclosed prior to the close of discovery, makes that claim.  There is no basis set forth upon which the court could conclude that her review of files is complete or that the persons listed are the only persons "similarly situated" to the plaintiff within the agency.

77. See Response to Paragraph 76.

78. See Response to Paragraph 76.

79. See Response to Paragraph 76.

80. See Response to Paragraph 76.

81. See Response to Paragraph 76.

82. See Response to Paragraph 76.

83. See Response to Paragraph 76.

84. See Response to Paragraph 76.

85. See Response to Paragraph 76.

86. Disagree. (Defense Exhibit 54)

**B     PLAINTIFF'S STATEMENT OF MATERIAL FACTS**

1. From the very beginning of her employment by the defendant's predecessor, the Connecticut Department of Correction, the plaintiff was subjected to a hostile work environment based on her race, including racial slurs and disparate treatment. (Exhibit B, ¶¶ 2, 3, 4, 5, 6, 7, 8, 11, 12, 17)

2. The plaintiff is physically disabled. She receives disability retirement compensation. She has undergone surgery on her left knee and anticipates surgery on her right knee. She continues to suffer from severe neck, shoulder and back pain. (Exhibit A, ¶ 6)

3. The plaintiff suffered knee injuries along with back and right Achilles tendon injuries. She suffered multiple trauma to her body from the 1990 injury at the Somers/Osborne Facility. (Exhibit A, ¶ 7)

4. The defendant denied the plaintiff reasonable accommodations for her disabilities. (Exhibit A, ¶ 10)

5. The defendant has treated the plaintiff differently from her white co-workers. She has been denied the right to work with a disability when her co-workers were given that right. (Exhibit A, ¶ 16)

6. Although the plaintiff was receiving Workers Compensation, she was trying to return to her job with the defendant. She attended meetings with the authorized representatives of the defendant, requesting that she be allowed to do so. She was refused permission. (Exhibit A, ¶ 17)

7. The defendant forced the plaintiff, when she asked to return to work, to undergo a Functional Capacity Examination contrary to the defendant's own regulations and practices. (Ibid.)

8. No other workers at the plaintiff's facility were required by the defendant to undergo a Functional Capacity Examination when they requested to return to work following an injury. (Ibid.)

9. At her Functional Capacity Examination, the plaintiff was forced to crawl on her knees despite documentation of a pre-existing knee injury. (Ibid.)

10. At her Functional Capacity Examination, the plaintiff was forced to climb a ladder despite documentation of a pre-existing knee injury. (Ibid.)

11. The plaintiff's job with the defendant was working as a nurse at an

out-patient clinic.  (Ibid.)

 12. Throughout these events, the plaintiff was subjected to overt racial harassment by her supervisor.  (Ibid.)

 13. None of the white employees of the defendant was required to go to a Functional Capacity Exam before returning to work from Workers Compensation leave.  (Id. ¶ 18)

 14. White employees of the defendant were allowed to return to work with devices to aid them to work, such as braces, canes, crutches, casts and hearing aids.  Some needed the use of dialysis three times weekly.  They were not subjected to the "100%" rule to which the plaintiff was subjected.  (Ibid.)

 15. The plaintiff was the only black nurse on the first shift.  She was subjected to racial remarks by a co-worker and, when this was reported to her supervisor, the supervisor refused to take any action.  (Id. ¶ 19)

 16. The plaintiff's efforts to obtain Workers' Compensation benefits always have been coupled with efforts to be permitted by the defendant to return to work.  The plaintiff has consistently maintained that she is able to work for the defendant; but that if the defendant insists on taking the position that she is not, then she is entitled to Workers' Compensation benefits "because the State couldn't have it both ways."  (Exhibit C, p. 63)

 17. The plaintiff never was aware of any request by the State of

Connecticut, through AAG Comerford or otherwise, for her to return to work. (Exhibit C, pp. 64, 74-75)

    18. When Dr. Selden reported that the plaintiff was able to return to work for the defendant without restrictions, the defendant refused to take the plaintiff back, stating that "unless I was 100 percent, I could not return...." (Exhibit C, pp. 64-65)

    19. The plaintiff always has wanted to return to work for the defendant and the only reason she has not done so is that the defendant would not allow her to do so. (Exhibit C, p. 68)

    20. The plaintiff's efforts to return to work for the defendant were handled personally by the plaintiff. Her attorney represented her in other matters, but not in that matter. If the defendant communicated on the subject of returning to work only with the plaintiff's attorney, as it claims, then it failed to communicate with the plaintiff because Attorney Rose was not representing the plaintiff in that matter and the defendant knew it. (Exhibit C, pp. 75-76)

    21. The names on Defense Exhibit 55 are not the only white persons the plaintiff contends were permitted to return to work at less than "100%" after being out of work due to injuries. (Exhibit C, pp. 76-77)

    22. The plaintiff was fully capable of returning to work for the defendant with an accommodation of her physical problems, but the defendant consistently

refused to do so although it did grant such accommodation to white employees similarly situated to her.  (Exhibit C, p. 105)

23.  Mary Lou Gibbons, a white female, was permitted to work in a position comparable to the plaintiff's although she suffered from epilepsy and therefore could never be alone in the institution.  (Exhibit 54)

24.  Michelle Cabana, a white female, was permitted to work in a position comparable to the plaintiff's although she suffered from an unstated physical condition which prevented her from working more than eight hours per day, contrary to regulations of the defendant which require all "100%" employees to be able to work additional hours at any time.  (Ibid.)

25.  Catherine Wilson-Spain, a white female, was permitted to work in a position comparable to the plaintiff's although she suffered from an unstated physical condition which prevented her from working overtime, contrary to regulations of the defendant which require all "100%" employees to be able to work overtime without warning.  (Ibid.)

26.  Peter Bert Henry, a white male, was permitted to work in a position comparable to the plaintiff's although he suffered from a deformed hand.  (Ibid.)

27.  Lorraine Szklarz, a white female, was permitted to work in a position comparable to the plaintiff's although she suffered from an unstated physical condition which prevented her from working overtime, contrary to regulations of

11

the defendant which require all "100%" employees to be able to work overtime without warning. (Ibid.)

28. Linda Cote, a white female, was permitted to work in a position comparable to the plaintiff's although she suffered from an unstated physical condition which prevented her from working on the third shift, despite regulations of the defendant which require all employees to be capable of working around the clock without warning. (Ibid.)

29. Carol Fey, a white female, was permitted to work in a position comparable to the plaintiff's although she suffered from an unstated physical condition which prevented her from working more than eight hours per day, contrary to regulations of the defendant which require all "100%" employees to be able to work additional hours at any time. (Ibid.)

30. Jacqueline Howard, a white female, was permitted to work in a position comparable to the plaintiff's although she suffered from an unstated physical condition which prevented her from working a full schedule, contrary to regulations of the defendant which require all "100%" employees to be able to work additional hours at any time. (Ibid.)

31. Donna Flores, a white female, was permitted to work in a position comparable to the plaintiff's although she suffered from an unstated physical condition which prevented her from working more than eight hours per day,

contrary to regulations of the defendant which require all "100%" employees to be able to work additional hours at any time.  (Ibid.)

32.  Pamela Fairhurst, a white female, was permitted to work in a position comparable to the plaintiff's although she suffered from an unstated physical condition which prevented her from working on weekends, contrary to regulations of the defendant which require all "100%" employees to be able to work weekends.  (Ibid.)

33.  Catherine Genova, a white female, was permitted to work in a position comparable to the plaintiff's although she suffered from an unstated physical condition which prevented her from working more than eight hours per day, contrary to regulations of the defendant which require all "100%" employees to be able to work extra hours without notice.  (Ibid.)

                            THE PLAINTIFF


                     BY:    _____
                            JOHN R. WILLIAMS (ct00215)
                            51 Elm Street, Suite 409
                            New Haven, CT 06510
                            203.562.9931
                            FAX: 203.776.9494
                            E-Mail: jrw@johnrwilliams.com
                            Her Attorney

13

CERTIFICATION OF SERVICE

On the date above stated, a copy hereof was mailed to Attorney Jane B. Emons, Assistant Attorney General, P.O. Box 120, Hartford, CT 06141-0120.

_____
JOHN R. WILLIAMS