```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

PAULINE G. GREENE,              :     No. 3-03cv526(WWE)
         Plaintiff,             :
                                :
v.                              :
                                :
UNIVERSITY OF CONNECTICUT       :
HEALTH CENTER,                  :
         Defendant.             :
```

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Pauline Greene claims that defendant University of Connecticut Health Center ("UCHC") discriminated against her on the basis of her race and color in violation of Title VII, and on the basis of retaliation in violation of Title VII.  Defendant UCHC has moved for summary judgment as a matter of law.  For the following reasons, defendant's motion will be granted.

### BACKGROUND

The parties have submitted statements of facts supported by affidavits and exhibits.  These submissions reveal the following undisputed facts.

Plaintiff was hired by the Department of Correction ("DOC") as a Correctional Nurse in 1989.  Plaintiff's position was subject to the policy that an employee is not allowed to return to duty after an illness or injury in an area of inmate contact if the employee is unable to perform the essential functions of the position, or if the employee has physical restrictions.

In June 1990, plaintiff filed a worker's compensation report claiming that she was injured while running with a stretcher. As a result of this injury, plaintiff did not return to work for four and half years due to physical restrictions. Plaintiff returned to work without any physical restrictions on May 22, 1995.

In November 1997, UCHC took over the management of the DOC's medical program.

On July 17, 1998, plaintiff filed a report of injury with the Workers' Compensation Commission, claiming that she tumbled out of a chair and injured her neck, knee and shoulder. That same day, plaintiff was examined and released to work full duty.

On July 19, 1998, plaintiff left her position at work due to her injury. This was the last day that plaintiff worked in her position.

She received workers' compensation benefits from July 20, 1998 through May 2002. During this period, she has represented to the Workers' Compensation Commission that "she was entitled to receive workers' compensation benefits."

On November 23 and 24, 1998, plaintiff participated in a Functional Capacity Evaluation ("FCE"). Thereafter, plaintiff claimed that pain in her knee resulted from the FCE.

On November 23, 1999, Dr. Jay Kimmel indicated that plaintiff wanted him to report that her injury resulted from the FCE. He wrote, "I am not certain that I can do this."

On June 22, 1999, plaintiff was evaluated by Dr. Steven Selden, a board certified orthopedic surgeon. In his "Connecticomp Worker Status Report," he wrote:

> Pauline Greene sustained a strain to her neck and back as well as contusion to the area of the coccyx as a result of work injury in July 1998. I see no evidence of any permanent impairment as a result of that injury. I am at a loss to explain why she has been out of work for more than eight (8) months. It is my opinion that she is capable of working without any restrictions as a result of the July 1998 injury. The patient does not require any further treatment for the July 1998 injury.
>
> I have nothing to add to her care. The patient does not require any further medical attention to her July 1998 injury.

He indicated further that Ms. Greene could return to work on June 23, 1999 "with no limitations."

In light of Dr. Selden's report, UCHC gave notice to plaintiff and the Workers' Compensation Commission that it intended to discontinue or reduce payments.

At the request of the Workers' Compensation Commissioner Angelo Dos Santos, plaintiff was evaluated on November 5, 1999 by another board certified orthopedic surgeon, Dr. Frank Gerratana. He found that plaintiff was employable "with the restriction that she not perform activities that involve more than mild amounts of standing and walking."

On August 18, 2000, in response to the discontinuation of her workers' compensation benefits, plaintiff filed an appeal petition in which she stated that she was "currently totally incapacitated and cannot return to work even for light duty."

On July 25, 2001, plaintiff filed a grievance, asserting that she had been released by her doctor to return to work but that her employer had not responded.  The grievance was denied at Step 1 and Step 2 levels of the grievance procedure.

On August 31, 2001, plaintiff filed a discrimination complaint with the CHRO against UCHC.  On May 3, 2002, the Workers' Compensation Commission ruled that plaintiff was no longer entitled to workers' compensation benefits, and that she had been overpaid benefits from the period of July 13, 1999 forward.

As a result of the Workers' Compensation Commission's ruling, UCHC informed plaintiff by letter that her workers' compensation absence ended July 12, 1999, that her one-year medical leave period ended July 11, 2000, and that she had exhausted her entitlement to leave under the Family and Medical Leave Act ("FMLA").  The letter instructed plaintiff to have her physician complete a medical certificate "to determine her ability to return to work without restrictions."  The letter informed plaintiff that if she was unable to return to work at that time, she could be separated from state service.

On June 26, 2002, plaintiff responded by sending a copy of Dr. Selden's June 22, 1999 woker status report.  She also requested reinstatement.  On June 28, 2002, plaintiff requested an extension to have a medical certificate sent, which request was granted on July 2, 2002.

On July 8, 2002, plaintiff provided to UCHC Human Resources medical documentation, indicating among other physical restrictions, that plaintiff required a cane.

In a letter dated July 10, 2002, plaintiff received notice that she was being separated from state service. The letter indicated that she had exhausted her medical leave of absence and her entitlement to leave under the FMLA.

Since her separation, plaintiff has applied for and received Social Security Disability payments.

## **DISCUSSION**

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255

(1986).  If a nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Anderson, 477 U.S. at 249.

**Disparate Treatment by UCHC**

Plaintiff alleges that her termination from state service constitutes disparate treatment in violation of Title VII based on her race and color.  Specifically, plaintiff claims that defendant UCHC applied the "return to work" policy in a discriminatory manner.  Defendant UCHC asserts that summary judgment is appropriate, since it had a legitimate non-pretextual reason for the termination.

The Court analyzes plaintiff's disparate treatment claim against UCHC according to the burden shifting process established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-56 (1981).

To establish her prima facie claim of disparate treatment based on her termination, plaintiff must demonstrate that (1) she belongs to a protected class; (2) she was performing her duties satisfactorily; (3) she suffered an adverse employment action;

and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Although the plaintiff's initial burden is not onerous, she must show that her termination was not made for legitimate reasons. Thomas v. St. Francis Hospital and Medical Center, 990 F. Supp. 81, 86 (D. Conn. 1998).

If the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, non-discriminatory business reason for the alleged discriminatory action. The plaintiff must then prove by a preponderance of the evidence that the supposed legitimate reason is actually a pretext for discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993).

For purposes of ruling on this motion, the Court assumes that plaintiff has satisfied the prima facie case.

Defendant proffers that plaintiff was terminated after it was determined that she was no longer entitled to medical leave and she could not return to work due to the policy forbidding employees in hazardous duty positions to return to work with physical restrictions. After careful review, the Court finds that plaintiff has failed to demonstrate that defendant's proffered reason is pretextual. Plaintiff asserts that she was denied the opportunity to return to work while similarly situated white employees were permitted to return with comparable

accommodations.

A showing that similarly situated employees outside the protected class received more favorable treatment can serve as evidence of pretext, but only if the plaintiff shows that she was "similarly situated in all material respects" to the comparators. <u>Graham v. Long Island R.R.</u>, 230 F.3d 34, 39 (2d Cir. 2000).

In her statement of disputed facts, plaintiff lists several individuals who purportedly were allowed to work with disabilities or physical restrictions.  However, these purported comparators do not raise an inference that plaintiff was treated in a manner disparate from treatment of similarly situated individuals outside the protected class.  Plaintiff cites several individuals who either had no restrictions or were not allowed to return to work until the physical restrictions were lifted.

Plaintiff has not proved that the individuals who were allowed to work with some form of disability are similarly situated in all material respects.  Michelle Cabana, a white female allegedly in a comparable position, was allowed to work with epilepsy.  However, epilepsy does not pose a similar hazard as a physical restriction requiring a cane, which instrument could be used by an inmate as a weapon.  Peter Bert Henry, a white male with a deformed hand, was approved to work without restriction or accommodation.  However, there is no indication

8

that his deformity posed any type of risk within the working environment of UCHC.

In fact, the comparators indicate that the policy was applied consistently regardless of race or color. For example, Catherine Genova, a white female, was released to light duty work but was not allowed to return to work with such restriction.

Accordingly, no evidence raises an inference of discriminatory animus, and summary judgment will enter in defendant's favor on plaintiff's claim that her termination resulted from disparate treatment.

### Retaliation

Plaintiff poses no opposition to UCHC's arguments in favor of summary judgment on this claim. Accordingly, summary judgment will be granted on this claim.

### **CONCLUSION**

For the foregoing reasons, the Motion for Summary Judgment [doc. # 27] is GRANTED. Summary judgment shall enter in favor of defendant UCHC.

The clerk is instructed to enter judgment and to close this case.

SO ORDERED.

```
        _____/s/_____
              Warren W. Eginton
              Senior United States District Judge
```

Dated the 15th day of June, 2005 in Bridgeport, Connecticut.